UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RANDALL B. KNESE,                          )
                                           )
                   Petitioner,             )
                                           )
        v.                                 )        No.  4:03CV1082 CEJ
                                           )                        (TIA)
DON ROPER,                                 )
                                           )
                   Respondent.             )

## REPORT AND RECOMMENDATION

This matter is before the Court on the petition of Randall B. Knese for a writ of habeas corpus under 28 U.S.C. § 2254.  The case was referred to the undersigned pursuant to 28 U.S.C. § 636(b).

### Procedural History

Petitioner is currently incarcerated at the Potosi Correctional Center located in Mineral Point, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Charles County, Missouri.  A jury found Petitioner guilty of first-degree murder and attempted forcible rape.  On August 8, 1997, the court sentenced Petitioner to death, said sentence to be served consecutive to 20 years on the attempted forcible rape charge.  (Resp. Exh. B, pp. 183-184).  Petitioner filed a direct appeal, and on February 9, 1999, the Missouri Supreme Court affirmed the judgment of the trial court.  State v. Knese, 985 S.W.2d 759 (Mo. banc 1999).

Petitioner then filed a pro se motion for post-conviction relief under Rule 29.15 on June 7, 1999 and an amended motion on September 20, 1999.  (Resp. Exh. F, pp. 9-23, 28-592)  The motion court denied relief on June 11, 2001.  (Resp. Exh. F, Vol 5, pp. 804-843)  Petitioner appealed the motion court's denial of post-conviction relief, and, on August 27, 2002, the Missouri Supreme Court affirmed in part and reversed in part.  Knese v. State, 85 S.W.3d 628 (Mo. banc 2002).  Specifically,

the court found that Petitioner received ineffective assistance of counsel which affected the penalty phase of the trial. Id. at 633. The court reversed the judgment as to the penalty phase and remanded the case for the purpose of ordering a new penalty phase. Id. at 635. The trial court then sentenced Petitioner to consecutive terms of life without the possibility of parole and 20 years. (Petition, pp. 2, 4; State v. Knese, No. 11R019600770-01 (11th Judicial Circuit (St. Charles County) May 5, 2003 (www.courts.mo.gov/casenet)) On August 21, 2003, Petitioner filed the instant petition for a writ of habeas corpus in federal court.

## Exhaustion Analysis

Before the undersigned may consider the merits of the petition for a writ of habeas corpus, the petitioner must demonstrate that he has exhausted his state court remedies. 28 U.S.C. § 2254(b). Here, respondent concedes that petitioner has exhausted all of his state court remedies by either fairly presenting his claims to the Missouri state courts or by procedurally defaulting on the state remedies available to him.

## Petitioner's Claims

In his petition for habeas relief, petitioner raises the following grounds:

(1) Petitioner received ineffective assistance of counsel because counsel failed to properly voir dire, investigate, and/or move to strike venirepersons Gray and Maloney;

(2) Petitioner received ineffective assistance of counsel because counsel failed to voir dire the jury regarding Petitioner's right not to testify and failed to request a jury instruction explaining that the jury could not draw an adverse inference from Petitioner's decision not to testify;

(3) There was insufficient evidence of deliberation to support a first degree murder conviction;

(4) The prosecuting attorney made inflammatory and prejudicial comments during guilt phase closing arguments;

2

(5)    Petitioner received ineffective assistance of counsel because counsel did not investigate and present evidence during the suppression hearing that demonstrated Petitioner's confessions were not made voluntarily, knowingly, and intelligently; and

(6)    The trial court erred by allowing medical expert Mary Case to give her opinions regarding whether the victim had been sexually assaulted and about the effects of cocaine use.

## Background Facts

The following facts are from the Missouri Supreme Court's opinion in Knese v. State, 85

S.W.3d 628, 630 (Mo. banc 2002):

> On the morning of March 23, 1996, neighbors observed a belligerent Knese in the streets, half-dressed, screaming, and combative. Other than minor scratches on his face, he did not appear injured. He jumped on the hood of a moving car, was dragged and left lying in the road. The police were called.

> When police asked how he was injured, Knese stated that the "devil had come to get him," and "the bitch tried to kill" him. A second officer, investigating the Knese home, discovered the body of Karin Knese on the floor.

> Knese was taken to the hospital, and advised of his Miranda rights, which he waived. Knese made four statements to the police regarding the murder – detailing the facts summarized in the next two paragraphs.

> He admitted killing his spouse. Angry about his drug use, she had decided to sleep in a separate room. Early the next morning, after ingesting cocaine, he attempted to make up. Not wanting to be bothered, she pushed him off the couch where she was sleeping. Knese attempted "foreplay," she protested; he pulled off her pants and panties. Climbing on top of her, he attempted to rape her, but failed because he could not sustain an erection.

> A fight ensued. She screamed "rape." Knese put one hand over her mouth while squeezing her neck with the other. She grabbed a glass lampshade and swung. Knese blocked the swing with his arm, shattering the lampshade. She picked up a piece of glass and swung again, cutting his palm. Knese took the glass and slashed her neck.

> The two fell to the floor, where Knese again strangled her. His hold
> was so tight that his thumb went through her skin. He bit her neck.
> When she put a finger in his eye, he headbutted her. Finally, Knese
> stood up, kicked her head, and stood on her neck for five or ten
> minutes.

Knese v. State, 85 S.W.3d 628, 630-631 (Mo. banc 2002).

## Claim One

Petitioner's first claim is that he received ineffective assistance of counsel because counsel failed to properly voir dire, investigate, and/or move to strike venirepersons Gray and Maloney. Petitioner asserts that these counsel's failure to adequately voir dire these jurors and failure to strike them caused prejudice to Petitioner during the guilt phase as well as the penalty phase of the trial. Respondent, on the other hand, argues that the Missouri Supreme Court's determination that there was no prejudice during the guilt phase of the trial was reasonable and entitled to deference.

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999). A federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a State court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See also Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record). While Petitioner argues that the biased jurors' statements prejudiced the guilt phase, Petitioner does not present clear and convincing evidence that the State court's **findings of fact** are erroneous. Therefore, the undersigned

finds that the aforementioned facts are entitled to a presumption of correctness.

With regard to the legal conclusions, this Court may not grant habeas relief on a claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413; see also Bucklew v. Luebbers 436 F.3d 1010, 1016 (8th Cir. 2006); Rousan v. Roper, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams, 529 U.S. at 411.

Petitioner asserts that the statements on the juror questionnaires of jurors Gray and Maloney demonstrated their bias which affected not only the penalty phase but also the guilt phase. He contends that the Missouri Supreme Court's decision that counsel's failure to read the questionnaires and voir dire these jurors prejudiced only the penalty phase was contrary to and an unreasonable application of federal law.

During his 29.15 appeal, the Missouri Supreme Court found:

Here, counsel did not complete the initial inquiry – reading the questionnaires – to determine whether Gray and Maloney were qualified jurors. Their responses suggest – although not conclusively establishing – that they would automatically vote to impose death after a murder conviction. . . . At a minimum, counsel should have read the questionnaires, and voir dired to determine whether they could serve as jurors. Failure to do so is ineffective assistance of counsel.

. . .

In this post-conviction proceeding, Knese must show by a preponderance of the evidence that counsel's deficient performance prejudiced the defense. . . . Here, there is reasonable probability – sufficient to undermine confidence in the outcome – that Knese was prejudiced by his counsel's failure to read the questionnaires and voir dire the two jurors. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed.2d 674, 698 (1984).

The error in this case affected penalty phase only. Nothing in either questionnaire indicated a predisposition by Gray or Maloney to automatically vote for guilt or innocence. The judgment is reversed as to the penalty phase, and the case is remanded.

Knese v. State, 85 S.W.3d 628, 633 (Mo. banc 2002).

The record indicates that the two jurors, Gray and Maloney, answered jury questionnaires which included a question about the death penalty. In response to the question, "[p]lease express any feelings you have about the death penalty," Mr. Gray gave the following answer: "[e]xecution in public period. If a criminal knew he was being executed in a public square in front of thousands of people he might think twice about committing murder." (Resp. Exh. G, p. 32) Mr. Gray also noted that the American he admired most was Oliver North. (Resp. Exh. G, p. 27) Petitioner's counsel testified that these two answers were "indicative of the type of a personality that I don't believe typically would have an open mind and be fair and impartial." (Resp. Exh. G, p. 34) Counsel also agreed that someone who admired Oliver North was "such a narrow-minded bigot that they should

not be on a jury." (Resp. Exh. G, pp. 85-86) He stated that he became physically sick to his stomach when he read the answer, and he opined that he did not know any defense attorneys that would leave anyone on a jury who answered that his most admired American was Oliver North. (Resp. Exh. K, pp. 144-145) Counsel regretted leaving Mr. Gray on the jury because, "I had not only left him on, he had become the foreman and he had just, in my opinion, gleefully imposed the death penalty." (Resp. Exh. K, p. 145) Counsel concluded that the mistake of leaving Mr. Gray on the jury was "the most egregious mistake [he'd] ever made in the trial of a case." (Resp. Exh. K, pp. 146-147)

However, counsel admitted that he would not have attempted to use his peremptory strikes based on the questionnaire answers, as he would not have had grounds for cause. (Resp. Exh. G, pp. 86-87; 90) Counsel did concede that there was nothing in the questionnaire or in Mr. Gray's voir dire responses that indicated any bias against Petitioner. (Resp. Exh. G, p. 88)

With regard to Mr. Maloney, his response to the question regarding his feelings about the death penalty was as follows: "[d]on't allow endless appeals, fifteen years more time, last meals, and clergy to pamper a killer. . . . He didn't allow this for his victim. If he is found guilty, do it." (Resp. Exh. K, p. 150) Petitioner's counsel stated that, if he had read this answer prior to voir dire, he would have stricken Mr. Maloney. (Resp. Exh. G, p. 38) Mr. Maloney also stated that to help solve the problem with crime, the parole board should be abolished, and there should be no more good time. (Resp. Exh. K, pp. 150-151) Counsel testified that he would have bumped Mr. Maloney off the jury based on this answer as well. (Resp. Exh. K, p. 166)

Further, in response to a question whether he knew Tim Braun, the elected St. Charles Prosecuting Attorney at the time of the trial, Mr. Maloney answered that he knew Tim Braun through politics. (Resp. Exh. G, p. 39) He further stated that he was a member of the Democratic Central

Committee and supported Tim Braun for office. (Resp. Exh. G, p. 39) Counsel testified that he would not have disqualified Mr. Maloney based on this answer, but he would have questioned him to determine the extent to which he personally knew Mr. Braun. (Resp. Exh. G, p. 40) However, counsel did state that he believed Mr. Maloney should have been stricken based on the his answer to the death penalty question. (Resp. Exh. G, p. 41; Resp. Exh. K, p. 172) Counsel testified that someone who answered the death penalty question in that way showed an attitude that would make it difficult to render a fair and impartial judgment. (Resp. Exh. G, p. 42; Resp. Exh. K, p. 171)

However, counsel later acknowledged that Mr. Maloney did not indicate in either the questionnaire or during voir dire that he could not be fair to Petitioner or that he had a predisposition for finding Petitioner guilty or not guilty. (Resp. Exh. G, p. 104) Further, the Court notes that, when asked, neither juror indicated an inability be fair and impartial. (Resp. Exh. A, pp. 214-215)

As previously stated, habeas relief may not be granted unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999) (quoting 28 U.S.C. § 2254(d)(1)). "Therefore, we will not grant [petitioner's] habeas petition unless the state court's decision in this case was contrary to, or an unreasonable application of, the standard articulated by the Supreme Court in Strickland." Id; see also Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006) (where state court correctly identifies Strickland as the controlling authority, federal courts "address whether the state court unreasonably applied that precedent and whether the state court unreasonably determined the facts in light of th evidence presented.").

To establish ineffective assistance of counsel petitioner must satisfy a two prong test.

Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The prejudice prong requires Petitioner to prove that but for counsel's deficiency, the outcome of his trial would have been different absent counsel's error. Id. at 694; Bucklew, 436 F.3d at 1016. In other words, Petitioner must demonstrate "that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." Bucklew, 436 F.3d at 1016 (citation omitted). Further, "[j]udicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." Id. (citation omitted). Because a habeas petition claiming ineffective assistance of counsel involves mixed questions of law and fact, legal conclusions are reviewed de novo, and state court findings of fact are presumed to be correct under 28 U.S.C. 2254(d). Sloan v. Delo, 54 F.3d 1371, 1383 (8th Cir. 1995) (citation omitted).

In the instant case, petitioner is unable to show that trial counsel's performance was deficient or that he was prejudiced during the guilt phase of his trial. Strickland, 466 U.S. at 687. As such, there is no evidence that counsel's representation fell below the level of reasonableness or that but for counsel's errors, petitioner would have been acquitted. Wilcox v. Hopkins, 249 F.3d 720, 722 (8th Cir. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). While the state court found that counsel's deficient performance prejudiced the penalty phase of the trial, it correctly concluded that the guilt phase was not prejudiced by counsel's failure to investigate, voir dire, and/or strike jurors Gray and Maloney.

The undersigned has thoroughly read the voir dire questions, counsel's testimony, and Petitioner's Traverse. The relevant questions and answers pertained to the jurors' beliefs regarding

punishment, not conviction. Although counsel opined that the bias prevented the jurors from giving Petitioner a fair trial, nothing in the record supports this. Indeed, neither juror indicated that he could not remain fair and impartial during the lengthy voir dire.

With regard to Mr. Maloney's relationship with the prosecutor, the record shows that he was simply a member of the Democratic Central Committee and supported Tim Braun for office. There is no indication of a personal relationship that would affect his ability to be impartial. During voir dire, Mr. Maloney did not raise his hand when the prosecutor asked the panel about prior relationships with persons involved in the trial. (Resp. Exh. A, pp. 104-108) Counsel noted that if he had read the information in the questionnaire, he would have further questioned Mr. Maloney; however, he could not have disqualified Mr. Maloney on the basis of his answer. In short, none of the relevant questionnaire answers demonstrated any predisposition by either juror to automatically find Petitioner guilty. Therefore, the undersigned finds that the state court's finding that counsel was not ineffective during the guilt phase was not contrary to or an unreasonable application of Supreme Court precedent under <u>Strickland</u>. Accordingly, Petitioner's first claim for habeas relief should be denied.

### Claim Two

Petitioner next claims that counsel was ineffective for failing to voir dire the jury regarding Petitioner's right not to testify and failing to request a jury instruction explaining that the jury could not draw an adverse inference from Petitioner's decision not to testify. The Respondent contends that Petitioner's claim is without merit.

The Missouri Supreme Court considered Petitioner's claim in his rule 29.15 appeal and found:

> Knese argues that during the guilt phase, counsel was

ineffective for not voir diring about – or requesting a jury instruction to draw no adverse inference from – Knese's decision not to testify.

By deposition, counsel offered the following explanation for not voir diring. First, they did not decide whether Knese would testify until after the State submitted its case-in-chief. Voir diring before then would only draw more attention to the issue. Second, he knew Knese's confessions were going to be admitted (over objection). Thus, the jury would hear his version of what happened.

With regard to the jury instruction, counsel knew that the State was prohibited from commenting on Knese's failure to testify. Counsel concluded that requesting an instruction was irrelevant and would only serve to emphasize. The motion court held that this was reasonable trial strategy.

Defendants have a right to the no-adverse-inference instruction, *upon request. Carter v. Kentucky*, 450 U.S. 288, 300, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981). The instruction is not mandatory. Here, counsel decided to forego both voir dire on this matter and a jury instruction. This strategy was reasonable given the extensive confessions admitted at trial. Reasonable trial strategy is not ineffective assistance of counsel. *State v. Whitfield*, 939 S.W.2d 361, 369 (Mo. banc 1997), *cert. denied*, 522 U.S. 831, 118 S. Ct. 97, 139 L. Ed. 2d 52 (1997).

Knese v. State, 85 S.W.3d 628, 634-635 (Mo. banc 2002).

The record demonstrates that Petitioner's attorney testified that he did not submit an instruction regarding Petitioner's right not to testify because he did not think it had any relevance. (Resp. Exh. K, pp. 136-137) Counsel stated that he believed it had no relevance "because . . . the facts were known. The statement had come in . . . over my objection. So, they had his whole statement." (Resp. Exh. K, p. 137) Counsel further reasoned that the prosecution could not draw attention to the fact that a defendant did not testify. (Resp. Exh. K, p. 137) In addition, he believed that such an instruction highlighted the fact that Petitioner did not testify. (Resp. Exh. K, p. 137) Counsel also explained why he did not voir dire the jury on Petitioner's right not to testify. Counsel

11

stated, "the decision about whether or not [Petitioner] was going to testify was not made until after the state's case was submitted, so I wasn't about to voir dire the jury on that issue and start talking about if he didn't testify . . . when I didn't know if he was going to testify or not." (Resp. Exh. K, p. 138)

Further, the record demonstrates overwhelming evidence of guilt. Petitioner confessed to the crime multiple times. (Resp. Exh. A, pp. 333-338, 345-350) The county medical examiner, Dr. Case, testified to the victim's extensive physical injuries and cause of death of manual strangulation and probable suffocation causing asphyxiation. (Resp. Exh. A, pp. 515-528) Dr. Case also stated that the medical evidence supported Petitioner's statements to the police. (Resp. Exh. A, pp. 528-549)

Given counsel's trial strategy and the evidence of guilt in this case, the undersigned finds that the Missouri court's determination was not contrary to or an unreasonable application of Strickland. This Court "does not 'second-guess' trial strategy or rely on the benefit of hindsight, . . . , and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective[.]" Williams v. United States, 452 F.3d. 1009, 1013 (8th Cir. 2006) (citations omitted). As previously stated, a Petitioner must show deficient performance and resulting prejudice in order to demonstrate ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984). As properly determined by the Missouri Supreme Court, the decision of counsel to forego voir dire and a jury instruction on no-adverse-inference was reasonable considering Petitioner's extensive confessions which were admitted at trial. Knese v. State, 85 S.W.3d 628, 634 (Mo. banc 2002). Such a discussion during voir dire or an instruction could have brought negative attention to the fact that Petitioner did not testify on his own behalf. Petitioner is thus unable to overcome the presumption that counsel's performance was reasonable. Bucklew, 436 F.3d at 1016. Further, he is unable to

demonstrate that the outcome would have been different if counsel had voir dired the jury or submitted an instruction on no-adverse-inference of guilt. <u>Strickland</u>, 466 U.S. at 687. Therefore, the undersigned finds that Petitioner's second claim lacks merit and should be denied accordingly.

## **Claim Three**

Petitioner next claims that there was insufficient evidence of deliberation to support a first degree murder conviction. The Respondent contends that this claim is also without merit.

The Missouri Supreme Court reviewed the evidence and found it was sufficient to show deliberation. Specifically, the court stated:

> Mr. Knese next argues that there was insufficient evidence of deliberation to support his conviction for first degree murder. Deliberation is defined as "cool reflection for any length of time no matter how brief." It is not necessary that the actor brood over his or her actions for a long period of time. Rather, it is necessary "only that the killer had ample opportunity to terminate the attack once it began." In evaluating the sufficiency of the evidence, this Court reviews all evidence and inferences drawn therefrom in the light most favorable to the verdict, and disregards all contrary inferences.

> Viewed in this light, Mr. Knese had ample opportunity to reconsider his course of behavior toward his wife and to terminate the beating short of killing her. Mr. Knese told Detective Morrissey that after he had been strangling Ms. Knese for such a long time that he was exhausted and could tell that Ms. Knese was losing her strength because he could barely feel her pulse, he nevertheless got to his feet, kicked her several times and then stood on her neck until she stopped moving. The Court has previously found premeditation to exist when a defendant strangled the victim with his bare hands, and then applied a towel to the victim's face for several minutes longer to make sure the victim was dead. There was sufficient evidence, in particular Mr. Knese's own statements, from which a reasonable juror could have concluded that Mr. Knese deliberated on the killing of Ms. Knese.

<u>Knese v. State</u>, 985 S.W.2d 759, 769 (Mo. banc 1999) (internal footnotes omitted).

A federal court's review of a sufficiency of the evidence claim "is limited to determining

'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Gibbs v. Kemna</u>, 192 F.3d 1173, 1175 (8th Cir. 1999) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)). Here, the record indicates that there was sufficient evidence to support the conviction of first degree murder.

In Missouri, "[a] person commits the crime of first-degree murder 'if he knowingly causes the death of another person after deliberation upon the matter.' " <u>Khaalid v. Bowersox</u>, 259 F.3d 975, 977 (8th Cir.2001) (quoting Mo. Rev. Stat. § 565.020.1 (1999)). Deliberation is defined as "'cool reflection for any length of time no matter how brief.'" <u>Id.</u> (quoting Mo. Rev. Stat. § 565.002(3)).

The evidence shows that after petitioner strangled and choked his wife, he was able to get to his feet. At that time, he started kicking her in the head and neck until she quit moving. (Resp. Exh. A, p. 337) Petitioner had the opportunity to stop the beating; instead, he rose to his feet and kicked her in the head and neck until she was dead. Although Petitioner argues that this was a crime of passion which precluded any deliberation, a reasonable jury could have found "cool reflection for any length of time no matter how brief" during this time. Thus, a rational trier of fact could have found the essential elements of first degree murder beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). The undersigned finds that the state court's decision was not contrary to or an unreasonable application of Supreme Court precedent. Therefore, Petitioner's third claim for habeas relief should be denied because it lacks merit.

## **Claim Four**

Petitioner next claims that the prosecuting attorney made inflammatory and prejudicial comments during guilt phase closing arguments. Respondent contends that this claim is procedurally

barred because Petitioner did not include this claim in his motion for a new trial.  <u>State v. Knese</u>, 985 S.W.2d 759, 772 (Mo. banc 1999).  Alternatively, the Respondent maintains that this claim lacks merit.

The Missouri Supreme Court noted that these claims of error were unpreserved, and the court reviewed them only for plain error.  <u>Id.</u>  at 772-774.  The Eighth Circuit Court of Appeals has held that "[a]n issue that receives plain-error review on direct appeal in state court is not procedurally barred from review under the AEDPA."  <u>Rousan v. Roper</u>, 436 F.3d 951, 962 n.4 (8th Cir. 2006) (citation omitted). Therefore, this Court will review the merits of Petitioner's claims.

Petitioner asserts that the prosecutor's closing argument was erroneous for several reasons: the prosecutor asked the jurors to put themselves in Ms. Knese's shoes and imagine how she cried out in pain and pleaded for mercy; the prosecutor asked the jurors to listen in silence for five minutes as if they were the victim; the prosecutor's argument was contrary to the instructions in that he told jurors not to consider lesser included offenses; the prosecutor repeatedly invoked God to obtain the conviction; the prosecutor ignored physical evidence; the prosecutor emphasized Petitioner's drug use; and the prosecutor argued victim impact evidence.  (Petition, pp. 33-36)

The Missouri Supreme Court addressed each of these claims under plain error review.  With regard to the prosecutor's suggestions that Ms. Knese cried out in excruciating pain and pleaded for mercy, the court stated that "a prosecutor may argue conclusions reasonably derived from the evidence, as long as the prosecutor does not suggest that he or she has some secret knowledge not presented to the jury."  <u>Knese</u>, 985 S.W.2d at 772.  The court further found that "[t]hese comments seem to be directed at dramatizing for the jury the numerous opportunities Mr. Knese had to stop his attack, emphasizing the State's position on the primary disputed issue in the case, that Mr. Knese

deliberated before killing Ms. Knese." Id. Thus, the court held that the comments were not "so far outside the evidence nor so inflammatory as to constitute a manifest injustice sufficient to warrant plain error relief." Id.

With regard to Petitioner's assertion that the prosecutor erroneously asked the jurors to listen in silence for five minutes as if they were the victim, the State court found that "the argument did not invite the jurors to put themselves in Mrs. Knese's place, but rather to show how long Mr. Knese had to consider what he was doing as he was killing his wife." Id. at 772-773. The court then held that the trial court did not plainly err in allowing the prosecutor's closing arguments. Id. at 773.

Petitioner also contends that the prosecutor's argument was contrary to the instructions in that he told jurors not to consider lesser included offenses. On appeal, Petitioner asserted that the prosecutor argued the jury could only consider second degree murder once it had unanimously acquitted Petitioner of first degree murder. Id. According to the opinion from the Missouri Supreme Court:

> This statement appears to be an accurate characterization of the court's instruction, however, and does not, in any case, rise to the level of manifest injustice sufficient to warrant plain error relief. Similarly, the prosecutor's comment that a verdict of manslaughter would be "the most tragic verdict" since it would require a finding that Karin Knese provoked her own death is not an exhortation to disregard the judge's instructions sufficient to warrant plain error relief. Arguing that a particular finding necessary to reach a verdict would be unjust is not the same thing as urging the jury to disregard the court's instructions. Indeed, it is an argument to take the instructions seriously and not to return a lesser verdict unless the evidence actually supports each element required to return that verdict.

Id.

With regard to the biblical references,[1] the Missouri Supreme Court found that they were "at most, ambiguous, general references to religious matters, and certainly [did] not rise to the level of 'excessive biblical or historical references' criticized by this court in *State v. Debler.*" Id. (internal footnote omitted). Thus the court held, "the argument was clearly directed to the facts of the case, and despite the occasional use of the word 'God,' the prosecution's argument was not designed to appeal to any improper bias on the part of the jurors. The trial court did not plainly err in allowing this argument." Id.

Petitioner also maintains that the prosecutor ignored the physical evidence that no semen was recovered and argued that there might have been semen present. The court again found no plain error, stating that "given the fact that Mr. Knese confessed to attempting to have intercourse with the victim and that semen was found on his underpants, the inference argued by the State was a permissible one." Id.

With regard to the emphasis on Petitioner's cocaine use as evidence of other crimes, the court held, "[a]llowing the State to refer to the evidence that Mr. Knese had taken cocaine before he killed his wife was not plain error. This was evidence before the jury and was arguably relevant to the question of whether, as Mr. Knese contended, he killed his wife in self-defense." Id.

Finally, Petitioner contends that the prosecutor erroneously argued victim impact evidence, specifically focusing on the impact Ms. Knese's death would have on her young son. The prosecutor stated that "Ms. Knese would not get to see her son take his first steps and that Mr. Knese had

---

[1] Petitioner takes issue with the prosecutor's statement, "God help us, God help us," if the jury did not convict Petitioner. According to the Petition, "He 'prayed' for a Murder 1st Conviction. He continuously said 'God bless her' referring to Mrs. Knese and recited a poem. He told the jurors that the 'Good Lord' wants to make it difficult to kill and that 'God' himself is saying think about it for 'God's Sake.'" (Petition, p. 35)

deprived her son of his mother." Id. at 773-774. The court agreed that this argument was irrelevant and designed to appeal to the jury's sympathy. Id. at 774. However, the court reiterated that Petitioner did not object to this argument. Thus, the Missouri Supreme Court held that "Mr. Knese has not met his burden of showing that these two references, laid alongside the remainder of the prosecutor's argument, which focused on the extended brutality of the killing, as described by Mr. Knese himself, had a 'decisive effect' on the jury's verdict." Id.

The undersigned finds that the determinations by the Missouri Supreme Court were not contrary to, nor unreasonable applications of, Supreme Court precedent. "A prosecutor's argument violates due process if the prosecutor's remarks 'infected the trial with unfairness.'" Hall v. Luebbers, 341 F.3d 706, 716 (8th Cir. 2003) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Indeed, habeas relief is warranted only where "the state's 'closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial.'" Id. (quoting Sublett v. Dormire, 217 F.3d 598, 600 (8th Cir. 2000)). In order to determine whether remarks by the prosecution infected the trial with unfairness, this court must "'measure the type of prejudice that arose from the argument; (2) examine what defense counsel did in his argument to minimize prejudice; (3) review jury instructions to see if the jury was properly instructed; and (4) determine if there is a reasonable probability that the outcome . . . would have been different.'" Id. (quoting Antwine v. Delo, 54 F.3d 1357, 1363 (8th Cir. 1995) (citation omitted)).

Here, Petitioner fails to show that these remarks rendered the trial unfair. The Court agrees with the state court that none of these comments were inflammatory, outrageous, or prejudicial to Petitioner, especially in light of Petitioner's confession and the overwhelming evidence against him. Further, the record demonstrates that defense counsel did object to the prosecutor's reference to Ms.

Knese's cries for mercy and the five minute moment of silence. (Resp. Exh. A, pp. 611, 659) The court overruled both objections. In addition, Petitioner's cocaine use was highlighted in instruction number 12, which instructed the jury that "a drugged condition from cocaine will not relieve a person of responsibility for his conduct." (Resp. Exh. B, p. 123) The state court also instructed the jury that closing arguments were not evidence but merely an aid in understanding the evidence and applying the law. The court further instructed that the jury's duty was to be governed by the evidence as it remembered it and the reasonable inferences it believed should be drawn from it. (Resp. Exh. B, p. 124) This instruction clearly reinforced for the jury the duty to disregard those comments that were not evidence.

Finally, and most important, Petitioner has made no showing that, absent these comments, "'there is reasonable probability that error complained of affected the outcome of the trial – i.e., that absent the alleged impropriety, the verdict probably would have been different.'" King v. Bowersox, 213 F. Supp. 2d 1026, 1034 (E.D. Mo. 2001) (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987)). As previously stated, the evidence, including Petitioner's confessions, clearly demonstrated that Petitioner was guilty of first degree murder for killing his wife. The undersigned thus finds that the state court's decision was not contrary to or an unreasonable application of Supreme Court precedent. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999). Therefore, his fourth claim for habeas relief should be denied.

### Claim Five

Petitioner next claims that he received ineffective assistance of counsel because his attorney failed to investigate and present evidence demonstrating that Petitioner's confessions were not made voluntarily, knowingly, and intelligently. Respondent contends that this claim is without merit.

Petitioner raised this argument on appeal from the denial of his Rule 29.15 motion. The Missouri Supreme Court stated:

> Knese argues that counsel should have presented evidence that his *Miranda* waiver was involuntary, unintelligent, and not knowing because he was high on cocaine at the time of his confession. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether a waiver is knowing and intelligent depends on the facts and circumstances surrounding the case and review is based on the totality of the circumstances, taking into account the background, experience, and conduct of the accused." *State v. Bucklew*, 973 S.W.2d 83, 90 (Mo. banc 1998), *cert. denied*, 525 U.S. 1082, 119 S. Ct. 826, 142 L. Ed. 2d 683 (1999). Defendant need not understand all possible consequences of the waiver, but only that he did not have to speak without the presence of an attorney, and that his statements could be used against him. *State v. Powell*, 798 S.W.2d 709, 713 (Mo. banc 1990), *cert. denied*, 501 U.S. 1259, 111 S. Ct. 2914, 115 L. Ed. 2d 1077 (1991).
>
> The record refutes Knese's allegation. Knese's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. There is no evidence of coercion. Over several hours, Knese made detailed, coherent statements to four police officers, after waiving his rights each time. He stated he understood his rights and wanted to speak to the officers. True, statements to the first officer were not introduced, as the officer described Knese's behavior as abnormal and wild. However, the remaining three officers testified that Knese was calm, rational, lucid and coherent at the time of his statements. In fact, Knese initiated conversation with a detective, later testifying that he was "just trying to talk to the police and tell them what happened."
>
> By deposition, counsel testified that he put on a defense of self-defense. He believed that even if it did not result in an acquittal, it often persuades the jury not to find the maximum. Further, the wounds on Knese's body were physical evidence that supported self-defense. Counsel's strategy was to minimize mention of Knese's cocaine abuse. He did not want to present evidence that Knese's drug use was an excuse for his crime. He believed that an ordinary jury is not the least forgiving of substance abuse, and asking them to ignore Knese's statements would hurt more than it would help.

Voluntary substance abuse is inadmissible to negate the required mental state for first-degree murder. *Nicklasson*, 967 S.W.2d at 617. Substance abuse garners little to no sympathy from jurors. *State v. Kenley*, 952 S.W.2d 250, 262 (Mo. banc 1997), *cert. denied*, 522 U.S. 1095, 118 S. Ct. 892, 139 L. Ed. 2d 878 (1998). Counsel's strategy – although unsuccessful – was reasonable.

Knese v. State, 85 S.W.3d 628, 633-634 (Mo. banc 2002).

The undersigned finds that Petitioner did not receive ineffective assistance of counsel. First, counsel did elicit testimony on cross-examination during the suppression hearing that Petitioner was acting abnormal, wild, and fading in and out of reality. (Tr. on Appeal, Motion Hearing, pp. 18, 21) However, the testimony also indicated that the officers found Petitioner to be lucid and coherent. (Tr. on Appeal, Motion Hearing, pp. 26, 28, 36, 39-40, 41, 55)

While Petitioner argues that counsel should have presented testimony from family members and medical staff, such testimony merely would have shown that he may have been under the influence of cocaine. However, it would not have contradicted the officers' testimonies that Petitioner knowingly, voluntarily, and intelligently waived his Miranda rights. See United States v. Byrne, 83 F.3d 984, 989 (8th Cir. 1996) (finding statement of defendant under the influence of methadone voluntary where agent testified that defendant was coherent, composed, and cooperative during the interrogation). Further, there was no evidence of coercion, and, in fact, Petitioner initiated contact with one of the interviewing officers.[2] (Tr. on Appeal, Motion Hearing, pp. 51-55)

Under Strickland, Petitioner must show that counsel's performance was deficient and that

---

[2] It is worth noting that the Missouri Supreme Court addressed whether Petitioner's waiver was voluntary, knowing, and intelligent. The court found that "[d]espite the fact that he was in the hospital at the time, there is not the slightest evidence in the record that Mr. Knese's numerous statements were anything less than voluntary . . ." State v. Knese, 985 S.W.2d 759, 767 (Mo. banc 1999). In addition, the court noted that there was overwhelming evidence presented at the suppression hearing that Petitioner intelligently waived his rights. Id.

such deficient performance prejudiced his defense. <u>Bucklew v. Luebbers</u>, 436 F.3d 1010, 1016 (8th Cir. 2006). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984); <u>see also</u> <u>Osborne v. Purkett</u>, 411 F.3d 911, 918 (8th Cir. 2005) (scrutiny of counsel's performance is highly deferential). In the present case, counsel testified that he did not want to draw too much attention to Petitioner's cocaine use. (Resp. Exh. K, pp. 82-87) Specifically, he stated that he did not want to use Petitioner's drug problem as a defense because people are not sympathetic to or forgiving of others who use illegal substances. (Resp. Exh. K, pp. 84-85)

The undersigned finds that this constitutes reasonable trial strategy entitled to substantial deference and not deficient performance. <u>See</u> <u>Wise v. Bowersox</u>, 136 F.3d 1197, 1207 (8th Cir. 1998) ("lawyers might reasonably have concluded that the jurors would not be more likely to sympathize with [petitioner] if they were presented with testimony that drug abuse may have contributed to his crime."). Thus, the finding of the state court that counsel was not ineffective was not contrary to nor an unreasonable application of <u>Strickland</u> and is entitled to deference. Petitioner's fifth claim for habeas relief should therefore be denied.

## Claim Six

Last, Petitioner asserts that the trial court erred by allowing medical expert Mary Case to give her opinions regarding whether the victim had been sexually assaulted and about the effects of cocaine use. The Respondent maintains that this claim lacks merit and is non-cognizable because it is a question of state law.

The undersigned finds that Petitioner is not entitled to relief on this claim. "The admissibility of evidence in a state trial is a matter of state law, and thus [the court] will grant habeas relief only

22

if the state court's evidentiary ruling 'infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'" Palmer v. Clarke. 408 F.3d 423, 436 (8th Cir. 2005) (quoting Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994)). The Missouri Supreme Court found:

> In her autopsy report, Dr. Case found that Ms. Knese was the victim of a probable sexual assault. . . . Mr. Knese objected to Dr. Case's testimony regarding that opinion on the ground that this was not a medical conclusion and that Dr. Case was not, therefore, qualified to render an opinion on this point. "Because expert testimony is always fraught with questions of relevancy and competency, the decision to admit expert conclusions is a matter of trial court discretion that will not be overturned on appeal absent an abuse of discretion." While Mr. Knese's point might have some merit if Dr. Case was solely qualified as a general medical expert, this argument ignores the fact that Mr. Knese stipulated that Dr. Case was an expert in forensic pathology. . . . Given that the opinion that the death was probably related to a sexual assault is precisely within the area of expertise described by the witness, an area of expertise to which Mr. Knese conceded, the trial court did not abuse its discretion in allowing Dr. Case to describe her autopsy finding that Karin Knese appeared to have been killed incident to a sexual assault. Even if this testimony had been erroneously admitted, no prejudice would have occurred, since the testimony only suggested in conditional and probabilistic terms what Mr. Knese directly confirmed: that he was attempting to sexually assault Ms. Knese at the time of the killing.

> Mr. Knese also contends that Dr. Case should not have been allowed to testify as to the stimulant effects cocaine generally causes in its users. . . . While it is difficult to determine precisely what relevance this general testimony had to the specific case at hand, it is also difficult to determine how Mr. Knese's defense might have been prejudiced by Dr. Case's opinion that Dr. Case's opinion that cocaine use may cause increased strength and stamina in its users. Mr. Knese does not explain how he was prejudiced, and there is no suggestion in the record of any prejudice that would rise to the level of manifest injustice.

State v. Knese, 985 S.W.2d 759, 768-769 (Mo. banc 1999).

The record indicates that Petitioner's counsel objected to Dr. Case's testimony regarding the sexual assault and cocaine use. The trial court allowed Dr. Case to testify regarding the significance she thought the position of the body might have, but the court also cautioned the prosecutor not to go too far. (Resp. Exh. A, pp. 504-505) In addition, the court allowed the attorneys to voir dire Dr. Case regarding her training in toxicology and specifically cocaine. (Resp. Exh. A, pp. 557-564)

Petitioner baldly asserts that this testimony rendered his trial unfair. However, the undersigned finds that admission of this testimony was a matter of state law and did not result in any constitutional violation. Indeed, "[n]o decision of the Supreme Court 'clearly establishes' that experts (or any other witnesses) must be *right*; the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies." Buie v. McAdory, 341 F.3d 623, 625 (7th Cir. 2003). Here, Petitioner's counsel was allowed to voir dire the witness on her expertise and also cross-examine her in order to assist the jurors in determining "where the truth lies." Id. Therefore, the state court's admission of this testimony was not contrary to nor an unreasonable application of Supreme Court precedent. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999) . As a result, Petitioner's sixth claim for relief should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the petition of Randall B. Knese for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be **DISMISSED** without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for

good cause is obtained.  Failure to timely file objections may result in a waiver of the right to appeal questions of fact.  <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).


<u>       /s/ Terry I. Adelman       </u>
UNITED STATES MAGISTRATE JUDGE

Dated this <u> 28th </u> day of August, 2006.