UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RANDALL B. KNESE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) No. 4:03-CV-1082 (CEJ) |
| | ) |
| DON ROPER, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on petitioner's objections to the Report and Recommendation of United States Magistrate Judge Terry I. Adelman, to whom the matter was referred pursuant to 28 U.S.C. § 636(b). On August 28, 2006, Judge Adelman issued a Report and Recommendation, recommending that the petition of Randall Knese for a writ of habeas corpus under 28 U.S.C. § 2254 be dismissed. Petitioner has filed objections to the Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1), the Court makes the following *de novo* determination of the portions of the report and the specified findings or recommendations to which objection is made.

On June 16, 1997, a jury in the Circuit Court of St. Charles County, Missouri found petitioner guilty of attempted forcible rape and first-degree murder in connection with the killing of his wife, Karin Knese. Following the penalty phase of the trial, the jury recommended the death penalty for the murder conviction. On August 8, 1997, the trial court sentenced petitioner to death on the murder charge and a 20-year consecutive term imprisonment for the attempted rape charge.

Petitioner's convictions and sentences were affirmed on direct appeal.  State v. Knese, 985 S.W.2d 759 (Mo. 1999) (en banc).  Petitioner then sought post-conviction relief pursuant to Rule 29.15, Mo.S.Ct.R., which the motion court denied following an evidentiary hearing.  On August 27, 2002, the Supreme Court of Missouri found that petitioner had been denied effective assistance of trial counsel and reversed the judgment with respect to the penalty phase.  Knese v. State, 85 S.W.3d 628 (Mo. 2002) (en banc).  On May 5, 2003, petitioner was re-sentenced to life imprisonment without possibility of parole and a consecutive term of twenty years' imprisonment.

Petitioner asserted six claims in his timely-filed habeas corpus petition.  After review of the merits, Judge Adelman recommended denying relief on all claims.  Petitioner has filed an objection to Judge Adelman's Report and Recommendation with respect to his claim that he was denied effective assistance of trial counsel because counsel failed to properly voir dire, investigate and/or move to strike two venirepersons, Dennis Gray and Richard Maloney.

A habeas corpus petitioner must show that the state court adjudication of his claim –

(1) resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is only "contrary to" established Supreme Court precedent if the state court applied a rule that directly contradicts Supreme Court precedent containing materially indistinguishable facts.  Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)).  A state court's application of the law is not "unreasonable" if it is merely incorrect; it must be objectively unreasonable.  Id.  Factual findings by the state court shall be presumed to be correct; this presumption will be rebutted only by clear and convincing evidence.  § 2254(e)(1).

Prospective jurors completed questionnaires prior to reporting for voir dire.  In addition to seeking general background information, the questionnaire probed the prospective jurors' attitudes about crime and the death penalty.  Dennis Gray, who served as foreperson for the jury, stated that he believed that the laws were "way to[o] soft" on criminals and that the primary causes of crime were welfare and housing projects.  "Make people work for an education and a job like I and thousands like me had to," he stated.  His proposal for solving the crime problem was to "build more jails and give out longer sentences -- keep these off the streets -- fewer paroles.  I pay enough taxes to float a battleship anyway."  With regard to the death penalty, Gray wrote:  "Make executions public.  If a criminal knew he was being executed in a public square in front of thousands of people, he might think twice about committing a murder."  Gray identified the three people he

most admired as "Oliver North, General Schwartzkauf [sic], and John F. Kennedy."

Juror Richard Maloney wrote that our laws are "for the most part, too soft" on criminals, and that "drugs, greed, [and] power" were the primary causes of crime. He opined that the parole board and good-time credits should be abolished. With regard to the death penalty, Maloney wrote: "Don't allow endless appeals, 15 years more time, last meals, and clergy to pamper a killer. He didn't allow this for his victim. If he is found guilty, do it." Maloney identified Mother Theresa, Bill Gates, and Jim Murphy of the AFL-CIO as the three persons he most admired. Maloney also indicated that he and his wife were members of the Democratic Central Committee, and that he knew Tim Braun, who was then the elected St. Charles County prosecuting attorney, "through politics."

Defense counsel testified in deposition and at the post-conviction hearing that he had no recollection of reading the Gray and Maloney questionnaires until after the trial. He testified that when he read Gray's responses, he became "physically nauseated" and he described his error in leaving Gray and Maloney on the jury as "the most egregious" he had ever committed in a trial. Because he had not read the questionnaires, he did not conduct individual questioning of Gray and Maloney during the voir dire examination. Neither Gray nor Maloney responded when the trial court asked whether there was anyone on the panel who felt unable to follow the court's instructions with regard to the death

penalty.  Maloney alsondid not respond when the panel was asked about prior relationships with persons involved in the trial.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984).  In order to show prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  In order to obtain relief under § 2254(d)(1), however, it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, petitioner must show that the Missouri Supreme Court applied Strickland to the facts of his case in an objectively unreasonable manner.  Id.

The Missouri Supreme Court noted that "adequate voir dire to identify unqualified jurors" is one aspect of a defendant's right to a fair and impartial jury. Knese, 85 S.W.3d at 632.  A venireperson should be asked if he or she holds any biases "that would prevent or substantially impair the performance of his duties in accordance with his instructions and his oath." Id. (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)).  "This inquiry is meant to reveal whether a juror can set aside any prejudices and impartially fulfill his obligations as a juror." Id. (citing Wainwright v.

-5-

Witt, 469 U.S. 412, 421-22 (1985)). In this instance, the court stated, Gray and Maloney's questionnaire responses suggested that they would automatically vote to impose the death penalty after a murder conviction. Id. at 633. The court found, therefore, that counsel's failure to read the juror questionnaires and conduct voir dire fell below an objective standard of reasonableness. Id.

In applying the prejudice prong of Strickland, the Missouri Supreme Court noted: "This complete failure in jury selection is a structural error." Id. at 633 (citing Gray v. Mississippi, 481 U.S. 648, 668 (1987)). The court further found, however, that the error affected only the penalty phase of the trial, finding that "[n]othing in either questionnaire indicated a predisposition by Gray or Maloney to automatically vote for guilt or innocence." Id. at 633.

Petitioner argues that the bias found by the Missouri Supreme Court affected the guilt phase as well as the penalty phase. Because Maloney identified "drugs" as a cause of crime, petitioner argues that he might have been unable to fairly assess the evidence that petitioner assaulted and killed his wife following cocaine use. Both Gray and Maloney thought that society is "too soft" on crime. Petitioner contends that this belief would have precluded both jurors from properly considering lesser included offenses. Finally, Maloney claimed a connection with the prosecuting attorney, Tim Braun. Petitioner acknowledges that this connection is a "potential bias."

The question of whether a particular juror is biased is a factual determination. See Thompson v. Keohane, 516 U.S. 99, 111 (1995) (listing juror bias among those issue that depend heavily on the trial court's assessment of credibility and demeanor); Wainwright v. Witt, 469 U.S. 412, 429 (1985). The state court determined that there was no evidence that Gray and Maloney were predisposed to automatically vote for guilt or innocence. As noted above, factual findings by the state court are afforded a presumption of correctness that may be overcome only by clear and convincing evidence. Petitioner's disagreement with the state court's analysis of the factual record does not amount to clear and convincing evidence sufficient to overcome the presumption, nor is this the type of extreme circumstance from which juror bias may be presumed. See Smith v. Phillips, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring) (where a juror is a close relative of a participant in the trial or a witness a finding of implied bias may be justified). In the absence of a finding of actual juror bias, petitioner cannot establish that the state court's determination was contrary to or an unreasonable application of the Strickland standard. Cf. Johnson v. Armontrout, 961 F.2d 748, 754 (8th Cir. 1992) (defendant was prejudiced by counsel's failure to remove biased persons from jury panel).

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge Terry I. Adelman [#19] is **sustained, adopted, and incorporated** herein.

**IT IS FURTHER ORDERED** that the petition of Randall B. Knese for writ of habeas corpus [#4] is **denied**.

**IT IS FURTHER ORDERED** that petitioner has failed to make a substantial showing of the denial of a constitutional right and the Court will not issue a certificate of appealability.  See <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 21st day of September, 2006.